United States District Court
Southern District of Texas
**ENTERED**
July 02, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| ABEL ORLANDO RODRIGUEZ RODRIGUEZ, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 5:26-CV-00175 |
| KRISTI NOEM, *et al.*, | § § § | |
| Respondents. | § § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Petitioner Abel Orlando Rodriguez Rodriguez's ("Petitioner" or "Mr. Rodriguez") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. 1), challenging his post-removal order detention by Immigration and Customs Enforcement (ICE) officials with the Department of Homeland Security (DHS). Having considered the Parties' filings and the applicable law, the Court concludes that Petitioner's ongoing detention has become unreasonably prolonged in violation of his due process rights, and thus, immediate release is required.

For the reasons set forth below, Petitioner's Petition for Habeas Corpus, (Dkt. 1), is **GRANTED IN PART**. Respondents' Response to Petition for Writ of Habeas Corpus and Motion for Summary Judgment, (Dkt. 9), is **DENIED**. Respondents are **ORDERED** to **RELEASE** Petitioner from custody immediately, under reasonable conditions of release, and to submit a status report to the Court confirming Petitioner's release within 48 hours of the issuance of this Order.

**Background**

**A. Petitioner's Immigration History**

1 / 15

Petitioner entered the United States in June of 2002 and was later granted lawful permanent resident status under the Cuban Adjustment Act. (Dkt. 1 at 6; Dkt. 9 at 2.) Years later, in 2016, Petitioner was convicted of drug trafficking and sentenced to a three-year prison term in Florida. (Dkt. 1 at 7; Dkt. 9 at 2.) After he completed his sentence, he was transferred to ICE custody, and DHS initiated removal proceedings against him. (Dkt. 1 at 7; Dkt. 9 at 2.) In April of 2018, an Immigration Judge (IJ) ordered Petitioner removed to Cuba; Petitioner waived appeal, and therefore his removal order became final on the date it was issued. (Dkt. 1 at 7; Dkt. 9 at 2); 8 C.F.R. § 1241.1. Pursuant to Petitioner's final order of removal, DHS attempted to effectuate Petitioner's removal to Cuba, however the Cuban government refused to accept his return, and DHS did not succeed in removing him to Cuba. (*See* Dkt. 1 at 7; Dkt. 9 at 2.) In May of 2018, Enforcement and Removal Operations (ERO) determined that there was not a significant likelihood of Petitioner's removal in the reasonably foreseeable future, and on May 8, 2018, ERO released Petitioner on an order of supervision, requiring him to report annually to ICE ERO in Florida. (Dkt. 1 at 7–8; Dkt. 9 at 2.) Petitioner fully complied with all supervision requirements, reporting as directed, and he did not commit any new criminal offenses while he was released on supervision. (Dkt. 1 at 8.) Petitioner was also issued employment authorization documents while on supervision. (*Id.*)

In November of 2025, Petitioner appeared for his scheduled check-in with ICE, and ICE abruptly, without explanation or notice, detained Petitioner at the check-in. (*See id.*; Dkt. 9 at 2) Petitioner was taken to South Florida Detention Facility, and he states that while there he was physically beaten by guards on multiple occasions and denied medical care. (Dkt. 1 at 10–11.) Petitioner was then transferred to Webb County Detention Center in Laredo, Texas. (*Id.* at 11.)

Several months after detaining him, in January of 2026, ICE ERO prepared a third country removal packet and nominated Mexico as the country of removal. (Dkt. 9, Attach. 1 at 2–3.) Respondents then scheduled Petitioner for removal to Mexico. (Dkt. 1 at 11; Dkt. 9 at 3.) Petitioner was driven to the United States border with Mexico in a bus with other detainees on or around January 26, 2026. (Dkt. 1 at 11; Dkt. 9, Attach. 1 at 3.) Petitioner alleges that he was told to "turn himself in" to the Mexican authorities, and Petitioner refused to walk across the border, explaining to the immigration officials that he feared for his safety. (*See* Dkt. 1 at 11; Dkt. 9 at 3.) Petitioner alleges that in response to his refusal DHS officers removed Petitioner from the bus while he was restrained in chains, shoved him down the bus stairs, dragged him in front of the bus, and repeatedly beat him. (Dkt. 1 at 12.) As a consequence of Petitioner's refusal to voluntarily walk across the border, Mexican "immigration authorities denied [him] entry to Mexico." (Dkt. 9 at 3; Dkt. 15 at 1–2.) Petitioner was then taken back to Webb County Detention Center where he remains. (Dkt. 1 at 12.) Currently, "the Mexican government is refusing to accept failure to comply ('FTC') cases" and has refused to accept Petitioner in the country. (Dkt. 15 at 1.) As of Respondents' most recent filing, Respondents assert that "ERO headquarters is continuing to identify and secure removal to an alternate other third country." (Dkt. 15 at 2.)

## B. Procedural Background

Mr. Rodriguez filed the instant habeas action on February 6, 2026, submitting three claims for relief. (Dkt. 1 at 15–19.) First, he claims that his detention violates 8 U.S.C. § 1231(a)(6) of the Immigration and Nationality Act ("INA") as interpreted through *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*Id*. at 15–16.) Second, he argues that his detention has become indefinite in violation of the Due Process Clause of the Fifth Amendment because his removal is not reasonably foreseeable. (*Id*. at 17–18.) Third, he argues that Respondents attempted to unlawfully remove him

to a third country and that his ongoing detention cannot be justified based on Respondents failed attempt to remove him to Mexico. (*Id*. at 18–19.) The Court ordered Respondents to respond to the Petition by February 13, 2026. (Dkt. 4.) Respondents filed a timely response arguing that the Petition should be denied because Petitioner is lawfully detained under 8 U.S.C. § 1231 while ERO works to find a third country that will accept Petitioner's removal. (Dkt. 9 at 1–2.) Petitioner submitted a reply to Respondents' Response, maintaining that Petitioner's continued detention is unlawful and that his removal is not reasonably foreseeable. (Dkt. 10.) In May, the Court ordered Respondents to submit a status update on any progress that has been made to effectuate Petitioner's removal on or before May 15, 2026. (Dkt. 14.) On May 14, 2026, Respondents filed a status update indicating that ERO is working to identify and secure removal to a third country and provided no additional information indicating progress towards removal. (Dkt. 15.)

**Legal Standard**

### A.  28 U.S.C. § 2241

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). 28 U.S.C. § 2241(c)(3) authorizes "any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws. . . of the United States.'" *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Accordingly, 28 U.S.C. § 2241 confers jurisdiction upon the federal courts to hear challenges to the lawfulness of immigration-related detention. *Id*. (citing 28 U.S.C. § 2241(c)(3)); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Baez v. Bureau of Immigr. &*

*Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (unpublished); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished).

Habeas is "the basic method for obtaining review of continued *custody after* a deportation order had become final" and is available "as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 687–8 (citation omitted). "Whether a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory authority. The basic federal habeas corpus statute grants the federal courts authority to answer that question." *Id*. at 699 (citing 28 U.S.C. § 2241(c)(3)).

Moreover, a Court is not required to hold a hearing when the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted); *see also Trejo v. Warden of ERO El Paso E. Montana*, 2025 WL 2992187, at *2 (W.D. Tex. Oct. 24, 2025) (citations omitted).

## Discussion

The Court considers Mr. Rodriguez's claims that his re-detention in November of 2025 and ongoing detention since violates the INA and his due process rights. (Dkt. 1 at 15–18.) As an initial matter, the Court has jurisdiction to hear Petitioner's claims challenging the lawfulness of his post-removal order detention. *See Nguyen v. Noem*, 2026 WL 237282, at *5–6 (S.D. Tex. Jan. 28, 2026) (analyzing the Court's jurisdiction to hear such claims). Additionally, to the extent that Petitioner's third claim challenges the lawfulness of his removal to Mexico or a third country, the Court refrains from considering the merits of Petitioner's third claim given that Mexico has denied Petitioner acceptance to the country and Respondents do not appear to have any third countries to which they are actively trying to remove Petitioner. (*See* Dkt. 1 at 18–19; Dkt. 10 at 4; Dkt. 15.)

5 / 15

The Court first discusses the limits on post-removal-period detention under *Zadvydas* and then addresses the merits of Petitioner's claims that his current detention violates his statutory and constitutional rights because his removal is not reasonably foreseeable.

### A.  Limits on Post-Removal-Period Detention Under *Zadvydas*

Pursuant to 8 U.S.C. § 1231, once an IJ issues a removal order and that order becomes "final," the Attorney General has ninety days to affect the detainee's departure from the United States. *See* 8 U.S.C. § 1231(a)(1)(A); *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) *cert. denied*, 549 U.S. 1132 (2007). The beginning of the removal period is calculated to be the latest of "(i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order. (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B). In general, during this 90-day removal period, the detainee must remain detained. 8 U.S.C. § 1231(a)(2). If the detainee is not removed within that 90-day period, he may become eligible for supervised release until removal can be accomplished or DHS may continue to detain him for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 385 (2005); 8 U.S.C § 1231(a)(3).

All post-removal-period detention must comport with constitutional limits. The Supreme Court has recognized that "permitting indefinite detention of an alien would raise a serious constitutional problem" and that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas,* 533 U.S. at 690. Thus, the Supreme Court held in *Zadvydas* that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final

orders of removal. *Id.* at 699. Therefore, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* (citations omitted).

In order to guide lower courts reviewing the reasonableness of continued detention, the Supreme Court determined that there is a presumptively reasonable period of six months of detention from the time that a removal order becomes final. *Id.* at 701. After six months have elapsed, once a noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the respondents do not offer sufficient rebuttal evidence once a habeas petitioner has made such a showing, then the court should grant the writ and order the habeas petitioner released under the *Zadvydas* framework. *See id.*; *but see Andrade*, 459 F.3d at 543–44 (finding that petitioner had failed to meet his initial burden when he offered "nothing beyond [his] conclusory statements").

Respondents argue that Petitioner's detention since November 2025 is lawful because Petitioner has not met his initial burden of showing that his removal is not reasonably foreseeable and because "Petitioner has failed to demonstrate any efforts to establish meaningful compliance with his obligation to cooperate with his removal or comply with his removal order." (Dkt. 9 at 9.) The Court first assesses whether Petitioner's detention is presumptively reasonable before addressing Respondents' arguments and determining the foreseeability of Petitioner's removal.

### 1. Length of Petitioner's Detention

As a threshold matter, the Court briefly addresses whether Petitioner's detention is presumptively reasonable. Respondents acknowledge that Petitioner's removal order became final on April 11, 2018, and provide supporting documentation to that effect. (*See* Dkt. 9 at 2) ("On April 11, 2018, Petitioner was ordered removed to Cuba and waived his appeal"); (Dkt. 9, Attach.

7 / 15

1 at 2.)[1] Accordingly, because Petitioner was ordered removed on or around April 11, 2018, the 90-day removal period elapsed 90 days later in or around July 10, 2018, and the 6-month presumptively reasonable period for detention elapsed after 6 months, on or around October 11, 2018.[2] Even if the presumptively reasonable period of detention outlined by the Supreme Court in *Zadvydas* did reset as of Petitioner's most recent re-detention, Petitioner has now been detained for over 6-months since his most recent re-detention by ICE on November 19, 2025. Accordingly, under every metric, the post-removal period of presumptively reasonable detention set out in *Zadvydas* has elapsed.

The Court briefly addresses Respondents argument that Petitioner's detention is lawful because the 90-day mandatory removal period under 8 U.S.C. § 1231(a)(1) "shall be extended if the alien 'fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure" and because "Petitioner not only failed to assist [in his own removal], he actively and aggressively refused his removal to Mexico." (Dkt. 9 at 9.) (citing 8 U.S.C. § 1231(a)(1)(C).)[3] [4] In the context of prolonged detention claims under *Zadvydas*, some

---

[1] Respondents later state that "Petitioner is subject to a final order of removal that was entered on May 22, 2025." (Dkt. 9 at 6.) Given that it is undisputed that Petitioner was issued a final order of removal on April 11, 2018, and Respondents own exhibits support such a finding, the Court will treat that date as the operative date by which to assess the Parties' arguments.

[2] Courts, including this one, have understood the six-month presumption to be a period of 180 days from the time the removal order becomes final which comports with DHS's post-removal custody review procedures. *See Sanchez v. Noem* (*Sagastizado II*)*,* 2025 WL 3760317, at *6–8 (S.D. Tex. Nov. 14, 2025) ("The reasoning of *Zadvydas* explains why the 180-day period—and therefore the presumption of reasonable detention—does not reset simply because a noncitizen is re-detained."); 8 C.F.R. § 241.4(k)(2)(ii).

[3] Respondents cite to "8. U.S.C. § 231(a)(1)(C)" however Respondents quote 8 U.S.C. § 1231(a)(1)(c).

[4] Respondents cite *Lawal v. Lynch*, 156 F. Supp. 3d 846 (S.D. Tex. 2016) for the proposition that until Petitioner identifies "self-made efforts" to apply for a visa to a third country, the removal period should be tolled to account for his failure to make an effort to secure his own removal. (Dkt. 9 at 9.) The Court disagrees with Respondents argument for two reasons. First, because *Lawal* applied equitable tolling in a disparate context where the petitioner had filed litigation that impeded

8 / 15

courts consider a noncitizen's failure to cooperate in removal efforts when considering whether the noncitizen has shown there is no significant likelihood of removal in the reasonably foreseeable future; others have found that failure to cooperate precludes a prolonged detention claim; and still other courts find that failure to cooperate equitably tolls the presumptively reasonable six-month removal period. *Gluschenko v. United States Dep't of Homeland Sec.*, 566 F. Supp 3d 693, 705–06 (W.D. Tex. 2021) (citations omitted).

Here, as discussed above, the 90-day period of mandatory detention cannot be extended in Petitioner's case because it elapsed back in 2018, 90-days after the issuance of Petitioner's final order of removal. Second, even if Petitioner's conduct were to justify some tolling of the 90-day removal period or the 6-month period of presumptively reasonably detention, 8 U.S.C. § 1231(a)(1)(C) does not permit the Government to detain Petitioner indefinitely on this basis. The district court in *Gluschenko v. United States Dep't of Homeland Sec.*, 566 F. Supp 3d 693 (W.D. Tex. 2021) provided an in-depth analysis interpreting non-compliance with the removal process as it relates to detention under 8 U.S.C. § 1231(a)(1)(C). Although the district court addressed a petitioner who was continuously detained as opposed to a noncitizen who was released on an order of supervision and then redetained as in this case, the Court finds *Gluschenko* persuasive in terms of taking Petitioner's alleged noncompliance into consideration when weighing the evidence of the foreseeability of Petitioner's removal and addresses Respondents' argument regarding noncompliance more in depth below. *See* 566 F. Supp 3d at 707.

---

his removal and does not support the assertion that the removal period should be tolled when a noncitizen fails to identify self-made efforts to effectuate their own removal, 156 F. Supp. 3d at 854–55, and second, because the Court "finds the use of equitable tolling to be misguided." *See Gluschenko v. United States Dep't of Homeland Sec.*, 566 F. Supp 3d 693, 707 (W.D. Tex. 2021) (providing an in-depth analysis of why the burden shifting framework under *Zadvydas* applies when the Government alleges that the petitioner's detention is lawful under 8 U.S.C. § 1231(a)(1)(C)).

Thus, having surpassed the 90-day-period of mandatory detention and the six-month presumption of reasonableness under *Zadvydas*, and finding no basis to further extend the statutory removal period, the analysis shifts to whether Mr. Rodriguez's removal is foreseeable at present.

## 2. Foreseeability of Petitioners' Removal to a Third Country

The Court now turns to the foreseeability of Mr. Rodriguez's removal. Under a traditional *Zadvydas* framework, the noncitizen bears the initial burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Zadvydas*, 533 U.S. at 701. Only after such a showing does the burden shift to the government to rebut it. *Id.* However, several district courts, including this one, have taken the position that the burden should be placed on the government in the case of redetention after release because the government typically bears the burden for justifying its revocation of a release on an Order of Supervision (OSUP). *See Nguyen*, 2026 WL 237282, at *8 (S.D. Tex. Jan. 28, 2026) (citing *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025) and *Escalante v. Noem*, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025)). Such is the case here. Where Petitioner was previously released for years on an order of supervision and was abruptly redetained, the burden for demonstrating a significant likelihood of removal in the reasonably foreseeable future is on the Government because the Government must demonstrate some changed circumstances that justify redetention.

The Court now considerers Respondents' arguments that Petitioner's removal is reasonably foreseeable, first addressing Respondents argument that Petitioner's alleged noncompliance justifies his ongoing detention under 8 U.S.C. § 1231, (*see* Dkt. 9 at 9), in more detail, then addressing their statement that ERO is working to effectuate Petitioner's removal to an alternate third country. (*See* Dkt. 9 at 10.)

10 / 15

First, while there appears to be no brightline test to evaluate the Government's assertion that noncompliance justifies extension of the removal period, some courts have held that "the government must demonstrate a lack of cooperation by clear and convincing evidence to justify extended detention." *Gluschenko*, 566 F. Supp 3d at 709. Additionally, district courts have found that where a petitioner's ongoing noncompliance is the central obstacle preventing his own removal, the petitioner's *Zadvydas* claim should be denied. *See id.* at 711 (holding that the petitioner's *Zadvydas* claim failed where petitioner's failure to sign travel documents was the only obstacle preventing his immediate removal to his native country); *Davis v. Mayorkas*, 2025 WL 653346, at *4 (W.D. La. Feb. 27, 2025) (denying the petitioner's *Zadvydas* claim where he had a "long history of impeding removal by making false statements about his name, birthdate, and citizenship, and refusing to sign necessary forms"). Here, even assuming without deciding that Petitioner's actions at the time Respondents attempted to remove him to Mexico constituted noncompliance, the Court finds that Respondents have not provided evidence to demonstrate that Petitioner's conduct is the central obstacle preventing his removal nor have they shown that his removal is reasonably foreseeable.

As discussed above, when Respondents attempted to remove Petitioner to Mexico, Petitioner expressed a fear of removal to Mexico and refused to voluntarily walk across the border. (Dkt. 9, Attach. 1 at 1–3.) Since that time, Mexico has refused to accept Petitioner and Respondents have not shown any indication that they have renewed their requests for compliance from Petitioner in terms of removal to Mexico or any other third country, nor have they provided any evidence of ongoing noncompliance on the part of Petitioner. (*See* Dkt. 15.)[5] It has been nearly 6

---

[5] The Court notes that when DHS decides that removal should be extended under 8 U.S.C. § 1231(a)(1)(C), it is generally required to "[s]erve the alien with a Notice of Failure to Comply" that explains the relevant statutes and provides "an explanation of the necessary steps that the alien

11 / 15

months since Respondents sought to remove Petitioner to Mexico and since Mexico refused to accept Petitioner. (Dkt. 9, Attach. 1 at 3.) Accordingly, the Court rejects the argument that Petitioner's current detention is lawful under 8 U.S.C. § 1231(a)(1)(C) because Respondents have not provided any evidence of ongoing noncompliance on the part of Petitioner and there is no indication that Petitioner's own actions are the central obstacle preventing his own removal at this point in time. *See Gluschenko*, 566 F. Supp 3d at 711; *Davis*, 2025 WL 653346, at *4; *see also Rezaie v. Noem*, 2026 WL 1328200, at *2 (S.D. Tex. Jan. 3, 2026) (finding "[t]he government's generalized assertion that [the petitioner] 'has not cooperated' is not a sufficient basis to detain him").

Second, Respondents argue that Petitioner's claims should be denied because he is lawfully detained under 8 U.S.C. § 1231 while Enforcement and Removal Operations ("ERO") works to find a third country that will accept Petitioner's removal. (Dkt. 9 at 2, 6–11.) Respondents claim "[t]he evidence shows that ICE is seeking to facilitate the Petitioner's removal to a third country." (*Id*. at 10.) However, Respondents submit no evidence to the Court of any progress to secure removal to a third country. (*See id*.; Dkt. 15.) According to Respondents, the only country to which a request for acceptance has been submitted has now refused to accept Petitioner, and Respondents have not taken action to remove Petitioner to a third country since. (Dkt. 15, Attach. 1.) Respondents have now had years to work on removing Petitioner to a third country since his removal order became final in April of 2018, and over 180 days since redetaining him in November of 2025, but have no evidence that his removal is reasonably foreseeable. The lack of any meaningful progress towards removal indicates that removal is not reasonably foreseeable. *See*

---

must take in order to comply with the statutory requirements." 8 C.F.R. § 241.4(g). Respondents have provided no evidence that DHS has served Petitioner with a Notice of Failure to Comply in this case.

*Misirbekov v. Venegas,* 2025 WL 3033732, at *2 (S.D. Tex. Oct. 29, 2025) (finding that a "lack of progress in removing Petitioner makes removal unlikely in the foreseeable future" for a petitioner detained over nine months post-removal); *Balouch v. Bondi*, 2025 WL 2871914, at *3 (E.D. Tex. Oct. 9, 2025) ("[A] remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future.").

Finally, even applying a traditional *Zadvydas* framework, Mr. Rodriguez has provided the Court with good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner alleges that his removal is not reasonably foreseeable because his native country of Cuba has not changed its prior refusal to accept his return and DHS cannot identify any third countries to which Petitioner may foreseeably be lawfully removed. (Dkt. 1 at 13; Dkt. 10 at 23–24.) Mr. Rodriguez has shown that his native country has refused to accept him and that DHS's attempts to remove him have remained unsuccessful for years. (*See* Dkt. 1 at 16; Dkt. 10 at 23; Dkt. 15 at 1–2.) These facts establish "good reason to believe" that Petitioner's removal is not likely in the reasonably foreseeable future. *See Alam v. Nielsen*, 312 F. Supp. 3d 574, 581 (S.D. Tex. 2018) (holding removal not reasonably foreseeable where "no country would accept the detainee" or country of origin refused travel documents); *Trejo*, 2025 WL 2992187, at *5 (finding removal not reasonably foreseeable because "ICE has not identified a third country that will accept him").

Thus, Mr. Rodriguez has provided a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, and Respondents have not provided evidence to show that Petitioner's removal is reasonably foreseeable. Therefore, Petitioner's detention has become unreasonably prolonged, and his continued detention violates the INA and his rights under the Due Process Clause. *See Zadvydas*, 533 U.S. at 699 ("[w]hether a set of

particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory authority").

## Conclusion

For the forgoing reasons, Petitioner's Verified Petition for Habeas Corpus, (Dkt. 1), is **GRANTED IN PART**. Respondents' Response to Petition for Writ of Habeas Corpus and Motion to Dismiss, or Alternatively, Motion for Summary Judgment, (Dkt. 9), is **DENIED**.

Respondents are hereby **ORDERED** to immediately release Petitioner from custody under reasonable conditions of supervision. Respondents are **ORDERED** to notify the Court of the status of Petitioner's release **within 48 hours of the issuance of this order**. Respondents are also **ORDERED** to notify Petitioner's counsel of the exact location and exact time of his release as soon as practicable and **no less than three hours before release**.

The Court further **ORDERS** that Petitioner cannot be redetained without a material change in circumstances.

Finally, the Court further **ORDERS** that should Respondents identify a third country to which they intend to remove Petitioner, Respondents must provide at least ten (10) days' written notice, including the name of the proposed country of removal and confirmation that the third country has agreed to accept Petitioner, to Petitioner, Petitioner's counsel, and this Court, prior to any anticipated removal.

IT IS SO ORDERED.

SIGNED this July 2, 2026.

_____
Diana Saldaña
United States District Judge